UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANET WALKER, et al.,

    Plaintiffs,

    v.

DISTRICT OF COLUMBIA, et al.,

    Defendants.

Civil Action No. 10-506 (JEB)

## MEMORANDUM OPINION

After placing their son A.W. in a private school following the District of Columbia's failure to provide him with a free and appropriate public education, Plaintiffs Janet and Michael Walker filed an administrative action to recover tuition and other benefits. The hearing officer awarded some tuition reimbursement, but no compensatory education benefits. As a result, the Walkers brought this suit on behalf of A.W. under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq., challenging the hearing officer's decision. As is typical in IDEA cases, the parties have now filed cross motions for summary judgment.[1]

**I.    Background**

    A.  The IDEA Statutory Framework

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education (FAPE) that emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A). "Implicit" in the IDEA's guarantee "is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child." Bd. of Educ. of Hendrick

---

[1] The Court has reviewed the parties' cross Motions for Summary Judgment, Oppositions, and Replies.

1

Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 200 (1982). As a condition of receiving funding under the IDEA, school districts are required to adopt procedures to ensure appropriate educational placement of disabled students. See 20 U.S.C. § 1413. A student's eligibility for a FAPE under the IDEA is determined by the results of testing and evaluating the student, and the findings of a "multidisciplinary team" (MDT) or "individualized education program team." § 1414. Such a team consists of the parents and teachers of the disabled student, as well as other educational specialists, who meet and confer in a collaborative process to determine how best to accommodate the needs of the student and provide a FAPE. See § 1414(d)(1)(B).

School districts must also develop a comprehensive plan, known as an individualized education program (IEP), for meeting the special educational needs of each disabled student. See § 1414(d)(2)(A). The IEP must be formulated in accordance with the terms of the IDEA and "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." Rowley, 458 U.S. at 204. "If no suitable public school is available, the school system must pay the costs of sending the child to an appropriate private school." Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 519 (D.C. Cir. 2005) (citation and alterations omitted). The IDEA requires IEPs to include, among other things:

> [1] A statement of the child's present levels of academic achievement and functional performance, including . . . how the child's disability affects the child's involvement and progress in the general education curriculum; [2] a statement of measurable annual goals, including academic and functional goals, designed to . . . meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum . . . [and] meet each of the child's other educational needs that result from the child's disability; [3] a description of how the child's progress toward meeting the[se] annual goals . . . will be measured; [and 4] a statement of the special education and related services and supplementary aids and services . . . to be provided to the child, or on behalf of the child,

and a statement of the program modifications or supports for school personnel that will be provided for the child.

§ 1414(d)(1)(A)(i).

The IDEA requires that children with disabilities be placed in the "least restrictive environment" so that they can be educated in an integrated setting with children who are not disabled to the maximum extent appropriate. See § 1412(a)(5)(A). The IDEA also guarantees parents of disabled children the opportunity to participate in the evaluation and placement process. See §§ 1414(f), 1415(b)(1). Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an impartial due process hearing, see §§ 1415(b)(6), (f)(1), at which they have a "right to be accompanied and advised by counsel" and a "right to present evidence and confront, cross-examine, and compel the attendance of witnesses." § 1415(h). A qualified impartial hearing officer conducts the due process hearing in accordance with the Act. 5 D.C. Mun. Regs. § 3030.1.

Parents "aggrieved by" a hearing officer's findings and decision may bring a civil action in either state or federal court. § 1415(i)(2); 5 D.C. Mun. Regs. § 3031.5. The district court has remedial authority under the Act and broad discretion to grant "such relief as the court determines is appropriate" under the IDEA as guided by the goals of the Act. § 1415(i)(2)(C)(iii). That remedial authority includes tuition reimbursement for parents who unilaterally place their child in private school, see § 1412(a)(10)(C)(ii), and compensatory education "'to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE.'" Reid, 401 F.3d at 523 (quoting G. ex rel. RG v. Fort Bragg Dependent Schs., 343 F.3d 295, 309 (4th Cir. 2003)).

B. A.W.'s Education

A.W. is a five-year-old learning disabled student who currently attends the National Children's Research Center (NCRC). A.W. suffers from epilepsy, developmental and cognitive delay, and a speech disability. Admin. Record at 9 (Hearing Officer Decision). After several rounds of evaluations, the District of Columbia determined that A.W. was eligible for special education and related services under the IDEA in January 2009. Id. As a result, an MDT team was convened and an initial IEP was developed on January 13, 2009. Id. at 10. The IEP included "annual goals in the areas of math, communication/speech and language, and health/physical." Id. The IEP required the following special education and related services outside of the general education setting each week: (1) specialized instruction for 10 hours; (2) physical therapy for 30 minutes; and (3) speech-language pathology for 1 hour. Id.

A.W.'s neighborhood school is Shepherd Elementary, but that school advised Plaintiffs that it could not implement his IEP. Id. at 11. The District therefore recommended -- and A.W. initially attended -- Takoma Educational Center. Id. A.W.'s time there, however, was short-lived because Takoma failed to properly implement his IEP. Id. From his arrival in February 2009 until April 2009, A.W. received no physical therapy services. Id. Some, but not all, of the missed services were made up through double-time sessions in late April and early May 2009. Id. Takoma, moreover, failed to provide any specialized instruction outside of the general education setting for A.W., as required by his IEP. Id. Transportation services were inconsistent and late. Id. at 12. Finally, speech and language services were only provided during the regular school year, and not during the extended school year as required. Id.

After a number of complaints about A.W.'s education at Takoma, Plaintiffs unilaterally moved him to NCRC for the 2009-10 school year. Id. Because of his age, A.W. only attended

school half of the day. At NCRC, A.W. received speech/language assistance and specialized instruction, but physical therapy services were not -- and could not be -- provided by the school. Plaintiffs informed Defendants of his new placement on September 21, 2009, and requested that Defendants ensure the delivery of all the related services in A.W.'s IEP. Id. Two weeks later, Plaintiffs again sent notice to Defendants that A.W. was attending NCRC. Id. at 121. In that notice, Plaintiffs first requested tuition reimbursement for NCRC. Id. at 122.

On October 14, 2009, Plaintiffs filed a due process complaint alleging that the District had failed to provide appropriate placement for A.W. for the 2008-09 and 2009-10 school years and had thus failed to provide A.W. with a FAPE. Id. at 24 (Due Process Complaint). Plaintiffs sought a number of remedies, including reimbursement for NCRC; arrangement of related services that NCRC did not provide -- e.g., physical therapy -- new evaluations for A.W.; a new IEP; compensatory education; out-of-pocket costs; and reasonable attorney's fees. Id. at 39.

On December 10, 2009, a hearing officer convened a hearing and considered testimony and evidence from the parties. The hearing lasted two days. Several weeks later, on December 24, the hearing officer issued his decision (HOD) finding that the District had denied A.W. a FAPE because it had failed to: (1) provide special education and related services in conformity with his IEP; (2) permit Plaintiffs to inspect and review A.W.'s education records within 45 days of the request to do so; and (3) offer or provide an appropriate educational placement for A.W. Id. at 19. The HOD ordered the District to reimburse Plaintiffs up to $11,595 for tuition for both the 2009-10 and 2010-11 school years, and to re-evaluate A.W. by the end of the 2010-11 school year in order to develop a new IEP. Id. at 19-20. The hearing officer also determined that A.W. had progressed physically and therefore no longer needed physical therapy. Id. at 17-18. There was no discussion of whether compensatory educational services would be awarded.

5

Anticipating that A.W.'s full-day attendance during the 2010-11 school year would double his tuition, Plaintiffs filed a Motion for Clarification and/or Modification of the HOD on January 6, 2010. Id. at 342. Finding that the HOD "speaks for itself and requires no further clarification," the hearing officer denied Plaintiffs' motion on the same day. Id. at 345.

Plaintiffs now challenge that decision and the hearing officer's failure to award compensatory education. The parties have both moved for summary judgment.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). The mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. Liberty Lobby, 477 U.S. at 248. To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier of fact could find for the non-moving party. Laningham v. U.S. Navy, 813 F.2d 1236, 1241 (D.C. Cir. 1987); Liberty Lobby, 477 U.S. at 251-52 (court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

Although styled Motions for Summary Judgment, the pleadings in this case more accurately seek the Court's review of an administrative decision. The IDEA provides a framework for such review. More specifically, the IDEA permits "any party aggrieved by the findings and decision" rendered during administrative proceedings to "bring a civil action" in state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2). The

reviewing court "shall receive the records of the administrative proceedings; shall hear additional evidence at the request of a party; and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." § 1415(i)(2)(C). In a review of an HOD, the burden of proof is always on the party challenging the administrative determination, who must "'at least take on the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so.'" Reid, 401 F.3d at 521 (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1989)).

The Supreme Court has held that the IDEA's preponderance-of-the-evidence standard of review does not authorize unfettered *de novo* review. See Rowley, 458 U.S. at 206 ("Thus the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."). Courts must give administrative proceedings "due weight," id., and "'[f]actual findings from the administrative proceedings are to be considered prima facie correct.'" Roark ex rel. Roark v. District of Columbia, 460 F. Supp. 2d 32, 38 (D.D.C. 2006) (quoting S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 270 (3d Cir. 2003)). At the same time, the statute also suggests "less deference than is conventional in administrative proceedings," Reid, 401 F.3d at 521, since the district court is allowed to hear additional evidence at the request of the party, see § 1415(i)(2)(C)(ii), and must base its decision on the preponderance of the evidence. See § 1415(i)(2)(C)(iii).

## III. Analysis

### A. Compensatory Education

"Compensatory education is, as the term suggests, educational service that is intended to compensate a disabled student who has been denied the individualized education guaranteed by

7

the IDEA." Wilson v. District of Columbia, 2011 WL 971503, at *5 (D.D.C. March 18, 2011) (citing Reid, 401 F.3d at 518). Compensatory education is designed "to place disabled children in the same position they would have occupied but for the school district's violations of IDEA." Reid, 401 F.3d at 518. Denial of a FAPE is a prerequisite to an award of compensatory services. Id.

Here, Plaintiffs ask the Court to award A.W. compensatory education for the missed physical therapy sessions. Compl. at 9. Although the District does not dispute that A.W. was denied a FAPE when he failed to receive the physical therapy required by his IEP, it raises two other arguments. First, it contends that Plaintiffs were the ones who enrolled A.W. at NCRC, a school without the ability to provide physical therapy. Yet, because A.W. was denied numerous services at Takoma, his parents' moving him to NCRC cannot constitute a forfeiture of A.W.'s right to have physical therapy provided for by the District.

Defendants next argue that Plaintiffs produced no evidence at the hearing that could support an award of compensatory education because they have failed to show that A.W. was harmed by the lack of physical therapy services. Defs.' Motion at 5. The hearing officer's determination that A.W. had progressed physically, see Admin. Record at 17-18, however, does not necessarily alleviate the District's responsibility to compensate him for past violations. See Wilson, 2011 WL 971503, at *5 ("The fact that A.W. apparently . . . [made] progress during the following school year, while fortunate, does not excuse DCPS's failure to provide a service that A.W.'s IEP team felt was required for his continued development.").

The Court, therefore, finds that compensatory services for the missed physical therapy are appropriate. The HOD, however, does not directly address compensatory education; nor does it not discuss how A.W.'s development would have been affected had the District provided the

required physical therapy. The hearing officer, therefore, did not determine what services, if any, were required to put A.W. in the same position he would have been but for the District's violations.

The Court, moreover, concludes that the record lacks sufficient information for it to make an informed decision as to the proper amount, if any, of compensatory education. In particular, the Court has no way of knowing: (1) how much more progress A.W. might have shown if he had received the required physical therapy; or (2) the type(s) and amount(s) of services that would "place [A.W.] in the same position [he] would have occupied but for the school district's violations of IDEA." Reid, 401 F.3d at 518. Contrary to Defendants' assertion, however, the lack of evidence does not warrant summary judgment in their favor. Once a student has established a denial of the education guaranteed by the IDEA, the Court or the hearing officer must undertake "a fact-specific exercise of discretion" designed to identify those services that will compensate the student for that denial. Id. at 524; see also Stanton ex rel. K.T. v. District of Columbia, 680 F. Supp. 2d 201, 207 (D.D.C. 2010); Phillips ex rel. T.P. v. District of Columbia, 736 F. Supp. 2d 240, 247 (D.D.C. 2010). Where the record does not allow for that inquiry, remand or additional fact-finding is necessary. See Reid, 401 F.3d at 526 ("[ I]n light of the absence of pertinent findings in the administrative record and given that both parties previously filed cross-motions for summary judgment rather than exercising their right to 'request' consideration of additional evidence, the district court may determine that the 'appropriate' relief is a remand to the hearing officer for further proceedings."); Henry v. District of Columbia, 750 F. Supp. 2d 94, 99 (D.D.C. 2010) (remanding for hearing officer to craft appropriate compensatory education award).

The Court, accordingly, will remand this case to a hearing officer "to conduct the 'fact-specific exercise of discretion' required by Reid, and to craft an award that 'aim[s] to place [A.W.] in the same place [he] would have occupied but for the school district's violations of [the] IDEA.'" Henry, 750 F. Supp. 2d at 99 (quoting Reid, 401 F.3d at 518).

B. Reimbursement

Plaintiffs next argue that the hearing officer erred when he failed to modify the HOD to reflect the increase in A.W.'s tuition for 2010-11. Pls.' Motion at 16. Parents who unilaterally place their child in private school are entitled to reimbursement if the school district violated the IDEA, the private placement is appropriate, and the cost of the private placement is reasonable. Holland v. District of Columbia, 71 F.3d 417, 425 (D.C. Cir. 1995) (citing Florence County School District Four v. Carter, 510 U.S. 7, 15 (1993)).

Here, the HOD determined that the District had violated the IDEA and that NCRC is an appropriate placement for A.W. Admin. Record at 14, 17. The District does not contest these findings. The parties do dispute, however, the reasonableness of the increased tuition reimbursement request. Plaintiffs assert that the HOD only reflects half-day tuition; without the increased tuition reimbursement, they will be unable to send A.W. to NCRC. Compl., ¶¶ 40-43. Defendants counter that Mr. Walker testified at the hearing that the cost of A.W.'s education was $11,595. Since Plaintiffs did not submit any evidence below to support an increase in reimbursement, Defendants argue, they cannot now claim that A.W.'s tuition is more expensive. Defs.' Motion at 12-13. The IDEA, however, explicitly allows a party to submit new evidence to the district court when appealing an HOD, see 20 U.S.C. § 1415(i)(2)(C)(ii), and Plaintiffs have indeed submitted evidence to this Court that full-day tuition at NCRC is $22,695 plus an $80

activity fee. Compl., Ex. 2 (NCRC Tuition Rates). Plaintiffs have thus properly demonstrated the need for increased tuition, and the Court may consider this evidence in its analysis.

Defendants nevertheless contend that Plaintiffs have failed to satisfy their burden to demonstrate that the requested tuition increase is reasonable. Defs.' Motion at 14-15. The Court does not agree. The HOD determined that $11,595 was reasonable for half-day education. Admin. Record at 17. It is unsurprising that full-day education would be essentially double the amount. The Court is mindful that this is a substantial sum, but given A.W.'s special needs and NCRC's ability to meet those needs, the Court finds that the cost of reimbursement is reasonable. The Court will therefore award Plaintiffs the cost of full-day tuition at NCRC -- up to $22,775 -- upon proof of tuition payment for the 2010-11 school year. As Plaintiffs' appeal and the HOD were limited to the 2010-11 school year, recovery shall be limited to the tuition (and activity fee) for that period.

## IV. Conclusion

The Court, accordingly, ORDERS that:

1. Plaintiffs' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART;
2. Defendants' Motion for Summary Judgment is DENIED;
3. Defendants shall reimburse Plaintiffs up to $22,775 for the 2010-11 school year upon showing of tuition payment; and
4. The case is REMANDED on Count I in order for the hearing officer to conduct a fact-specific inquiry and make a determination on the issue of compensatory education.

**SO ORDERED**.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: May 20, 2011